The Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| ZACHARY PILZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAY INSLEE, et al., <br><br> Defendants. | NO. 3:21-cv-05735-BJR <br><br> ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

## I.   INTRODUCTION

On August 9, 2021, Governor Jay Inslee issued Proclamation 21-14 (the "Proclamation") making it a requirement that certain[1] state employees be vaccinated against COVID-19 in order to maintain their employment with the state.  The Proclamation gave state employees until October 18, 2021 to be vaccinated or face termination.  Plaintiffs are comprised of 100 state employees in various departments and agencies who opposed the Proclamation.  On October 5, 2021, Plaintiffs filed their complaint and moved for a temporary restraining order ("TRO") enjoining enforcement of the Proclamation.[2]

---

[1] Specifically, "health care, education, and state-agency workers" are covered by the Proclamation. Dkt. 61 at 1 & n.1; Dkt. 34-1 at PDF 68-69.

[2] Some plaintiffs had also filed an action in state court prior to filing this action. *Cleary v. Inslee*, No. 21-2-01674-34 (Thurston Cnty Super. Ct.).  The claims brought in the state action are substantively similar to those in this case, but the former were brought under state law. *See* Dkt. 71, Exh. G.

1

Plaintiffs claim the Proclamation violates the Due Process and Equal Protection Clauses of the 14th Amendment, the Free Exercise Clause of the First Amendment, Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act (the "ADA"), and the Contracts Clause of the Constitution.  On October 15, 2021, the Court heard oral argument and denied Plaintiffs' motion for a TRO.  The Court's ruling thus allowed the Proclamation to go into effect on October 18.  *See* Dkt. 54.  Plaintiffs refused to comply with the Proclamation and their employment with the state has been terminated.

Plaintiffs submitted supplemental briefing indicating that they now seek a preliminary injunction striking down the Proclamation and ordering Defendants to rehire them.[3]  Defendants have filed a motion for judgment on the pleadings, seeking final resolution of this case and the dismissal of all of Plaintiffs' claims.  Having reviewed Plaintiffs' request, Defendants' motion, the record of the case, and the relevant legal authorities,[4] the Court will grant Defendants' motion for judgment on the pleadings.  In granting Defendants' motion, the Court necessarily denies Plaintiffs' request for a preliminary injunction.  The reasoning for the Court's decision follows.

---

[3] Plaintiffs filed a "supplemental brief" on November 17, 2021, the introduction to which states: "Plaintiffs, having now been terminated under the Mandate, respectfully submit this supplemental brief in support of a preliminary injunction requiring their reinstatement of each individual to restore and preserve the status quo as of the start of this action." Dkt. 59 at 2.  The Court interprets this to mean: (1) all Plaintiffs have been terminated and (2) they seek a preliminary injunction compelling the State to rehire them.

[4] On April 25, 2022, the parties' stipulated to filing notices of supplemental authority after the Court noted, by email, that several courts had recently ruled on similar state and federal vaccine requirements.  Dkts. 69-70.  The parties filed their notices of supplemental authority on May 6, 2022.  Dkts. 71-72.

# I. INTRODUCTION

## A. Standard for Judgment on the Pleadings

The standard governing a motion for judgment on the pleadings under Rule 12(c) is "substantially identical" to the standard of Rule 12(b)(6). *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Under both rules, a motion shall be granted when, "accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

## B. The Proclamation

The Proclamation prohibits "health care, education, and state-agency workers from 'engaging in work' after October 18 if they [had not been] 'fully vaccinated against COVID-19.'" Dkt. 61 at 1 & n.1; Dkt. 34-1 at PDF 68-69. The Proclamation allows for medical and religious exemptions. Dkt. 34-1 at PDF 69-70. State agencies are required to accept applications for exemptions from employees "if they are entitled under the [ADA], Title VII . . . , the Washington Law Against Discrimination (WLAD), or any other applicable law to a disability-related reasonable accommodation or a sincerely held religious belief accommodation to the requirements of [the Proclamation]." *Id.* at PDF 44. Once an exemption is granted, the agency decides whether an accommodation can be made without imposing "undue hardship" on the agency. *Id.* at 44-45; Dkt. 27 at 7.

## C. Facial or As-Applied Challenge

The parties disagree on whether Plaintiffs are making a facial challenge to the text of the Proclamation itself, or an as-applied challenge to how the law has been implemented. Plaintiffs

3

argue their complaint should be construed as making both a facial and an as-applied challenge. Dkt. 67 at 3-5; Dkt. 1 at 29.  Defendants contend the complaint mounts only a facial challenge. Dkt. 61 at 3-4.  This is a threshold question that determines how the Court analyzes each of Plaintiffs' claims.

"A facial challenge is a claim that the legislature has violated the Constitution, while an as-applied challenge is a claim directed at the execution of the law." *Young v. Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021).  In the case of a facial challenge, "[the court] consider[s] only the text of the [law], not its application." *Calvary Chaple Bible Fellowship v. Cnty of Riverside*, 948 F.3d 1172, 1176 (9th Cir. 2020).  An as-applied challenge, however, is "wholly fact dependent" and involves an examination of the individual circumstances in which the law was applied to the litigants. *Young*, 992 F.3d at 779 (quoting Henry Paul Monaghan, *Overbreadth*, 1981 Sup. Ct. Rev. 1, 5, 32 n.134).

Whether a complaint makes a facial or as-applied challenge depends on both the nature of its allegations and the remedy it seeks.  A facial challenge alleges that "no set of circumstances exists under which the [statute] would be valid." *Id.* (quoting *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003)).  In contrast, an as-applied challenge alleges a specific set of circumstances in which the application of the law resulted in a violation of the plaintiff's rights. *Id.*  Generalized or conclusory allegations are not enough for an as-applied challenge.  For example, in *Young*, the Ninth Circuit found that the plaintiff had not properly asserted an as-applied challenge, because "although [plaintiff] peppered his pleadings with the words 'application' and 'enforcement,' he never pleaded facts to support an as-applied challenge." *Id.*

As to remedies, a facial challenge seeks to "invalidate[] the law itself." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [protected] activity, even though the law may be capable of valid application to others." *Id.* In other words, an as-applied challenge contemplates a remedy in which the challenged law survives but is applied differently.

The Court finds that Plaintiffs' complaint sets forth a facial and not an as-applied challenge to the Proclamation. First, the complaint does not adequately allege that the law is being applied in an unconstitutional manner. For example, in support of Plaintiffs' Free Exercise claim, the complaint contains several iterations of the allegation that "various State agencies have granted medical exemptions at a significantly greater rate than religious exemptions." Dkt. 1 ¶ 197; *see also e.g.*, *id.* ¶¶ 118, 177, 214. These generalized references, "peppered" throughout the complaint, pointing to an allegedly uneven application of the Proclamation's religious exemption are not enough to support an as-applied challenge. It is Plaintiffs' burden to adequately allege that Defendants' refusal to grant accommodations in these circumstances is discriminatory. The complaint's generalized allegations of statistical disparities between medical and religious exemptions, even if accepted as true, do not establish a specific set of circumstances in which the Proclamation was applied in a discriminatory manner.

Additionally, the remedy Plaintiffs seek is consistent with a facial challenge. Plaintiffs ask the Court to strike down the Proclamation in its entirety and reinstate Plaintiffs. *Citizens United v. FEC*, 558 U.S. 310 (2010) ("[T]he distinction between facial and as-applied challenge . . . is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint.").

Finally, as this Court noted in denying Plaintiffs' motion for a TRO, "the record before the Court demonstrates how totally ineffective this forum would be" for resolving the individual claims of 100 plaintiffs who have grievances with "many different agencies, in many, many different situations,"[5] and who, according to Plaintiffs, "all [] expect to testify."  Dkt. 53 at 46; Dkt. 67 at 4.  This action is clearly not the appropriate vehicle for resolving individual, as-applied claims of Plaintiffs who have little in common except their opposition to the vaccine requirement.  Accordingly, the Court construes Plaintiffs' complaint as mounting only a facial challenge to the Proclamation.

## II.   PLAINTIFFS' CLAIMS

### A. Free Exercise Clause

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  This prohibition applies to the states through the 14th Amendment.  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).  The Free Exercise Clause prohibits any "law [that] discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."  *Id.* at 532.  Plaintiffs allege that the Proclamation violates the Free Exercise Clause because it infringes on religious beliefs that conflict with vaccination.  The parties disagree on the standard the Court should apply in assessing the merits of Plaintiffs' Free Exercise claim.  Plaintiffs urge the Court to apply strict scrutiny.  Defendants argue that the Proclamation need only satisfy rational

---

[5] According to Defendants, and not disputed by Plaintiffs, "Plaintiffs live in at least 21 different counties and work for at least 40 different employers, including 15 different state agencies, 12 different local government entities, and 12 different private health care providers."  Dkt. 27 at 7.

6

basis review.

"[I]f the *object* of a law is to infringe upon or restrict practices because of their religious motivation," then it is subject to strict scrutiny. *Id.* at 533 (emphasis added). To survive strict scrutiny, a law must advance "a compelling [state] interest and [be] narrowly tailored to advance that interest." *Id.* In contrast, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531 (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990)). Laws that are generally applicable and facially neutral are subject only to rational basis review. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1238 (9th Cir. 2020). Under the rational basis standard, a law will be "upheld if [it is] rationally related to a legitimate governmental purpose." *Id.*

The first question before the Court is whether the Proclamation sets out to restrict religious exercise or whether it is neutral and generally applicable. Although Plaintiffs implicitly concede that the Proclamation does not overtly target any religious practice, they argue that the application of strict scrutiny to Free Exercise claims "extends beyond blatant facial discrimination" to include more "'subtle departures from neutrality.'" Dkt. 67 at 12 (quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971)).

Plaintiffs base their argument in part on *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). *See* Dkt. 67 at 11. In *Fulton*, the Court reviewed the City of Philadelphia's practice of referring orphan children to certain state-licensed foster care agencies. *Fulton*, 141 S. Ct. at 1875. Under Pennsylvania law, foster care agencies had the authority to "certify" certain families as suitable for adopting a child based on statutory criteria. *Id.* One Catholic agency ("CSS") refused

7

to certify same-sex couples as eligible for adoption because the agency did not recognize same-sex marriage. *Id.* In 2018, the City announced that it would no longer refer children to CSS because "the refusal of CSS to certify same-sex couples violated a non-discrimination provision in its contract with the City as well as the non-discrimination requirements of the citywide Fair Practices Ordinance." *Id.* at 1875-76.

The Supreme Court considered, *inter alia*, whether the relevant provisions of the Fair Practices Ordinance were generally applicable. *Id.* at 1876. The Ordinance stated: "Provider shall not reject a child or family . . . based upon . . . their . . . sexual orientation . . . unless an exception is granted by the Commissioner or the Commissioner's designee, in his/her sole discretion." *Id.* at 1878 (citation omitted). The Court found that "the inclusion of a formal system of entirely discretionary exceptions in [the provision] renders the . . . non-discrimination requirement not generally applicable." *Id.* It did not help the City's case that "[City officials] ha[d] made clear that the Commissioner 'ha[d] no intention of granting an exception to CSS' because of the agencies' religious views." *Id.* at 1878. Because the Ordinance was not generally applicable, the Court applied strict scrutiny. *Id.* at 1881.

Plaintiffs contend that the medical and religious exemptions in the Proclamation create a "mechanism for individualized exemptions" and should likewise trigger strict scrutiny here. Dkt. 67 at 11. Plaintiffs overstate *Fulton's* holding. *Fulton* did not hold that any law containing exemptions is *per se* not generally applicable. The Ordinance in *Fulton* contained a "system of *entirely discretionary* exceptions," and city officials used that discretion to effectively blacklist agencies with particular religious views. *Fulton*, 141 S. Ct. at 1878 (emphasis added). The exemptions created by the Proclamation here are not discretionary because state officials are not

empowered to decide what justifies an exemption. The Proclamation limits exemptions to qualifying medical conditions and sincerely held religious beliefs, and agencies must grant them if the applicant falls into one of those categories.

Plaintiffs nevertheless claim that "individualized exemptions are available" and that "the Governor made it clear that individualized assessment [of exemption requests] is mandatory when he forbade rubberstamping." Dkt. 67 at 12 (emphasis omitted). The Proclamation does indeed prohibit "rubberstamping" exemption requests, but that does not transform the law's religious exemption into the type of "individualized exemption" at issue in *Fulton*. Dkt. 34-1 at PDF 50-51. Performing an "individualized assessment," presumably requiring agencies to exercise a modicum of due diligence to confirm that exemption requests are not fraudulent or incomplete, is not the same as giving government officials wide latitude to deny exemptions for any reason. Therefore, the Proclamation's standardized exemptions do not prevent the Court from finding the law generally applicable, and thus do not trigger strict scrutiny.

In addition to *Fulton*, Plaintiffs cite *Roman Catholic Diocese of Brooklyn v. Cuomo*, a case in which the Supreme Court enjoined enforcement of an executive order that limited attendance at religious services in New York during the height of the COVID-19 pandemic. 141 S. Ct. 63 (2020) (emergency application referred to the full Court). The executive order imposed disparate capacity limits in different "zones" of the city and state, and the restrictions on houses of worship were often stricter than those imposed on secular businesses within the same zone. *Id.* at 66. The Court found that "the regulations [could not] be viewed as neutral because they single[d] out houses of worship for especially harsh treatment." *Id.* Accordingly, the Court applied strict scrutiny. *Id.* at 67 (finding that stemming the spread of COVID-19 was a compelling state interest but that the law

9

was not narrowly tailored).

Plaintiffs argue that this Court should similarly apply strict scrutiny to the Proclamation, emphasizing that, "[a]t a minimum, [the First] Amendment prohibits government officials from treating religious exercises worse than comparable secular activities." Dkt. 67 at 13 (quoting *Roman Catholic Diocese*, 141 S. Ct. at 69 (Gorsuch, J., concurring)). The factual circumstances of *Roman Catholic Diocese* are easily distinguishable, and Plaintiffs are unable to identify what "comparable secular activities" are being treated better than religious exercises in this case. Additionally, even if a comparable secular activity could be identified, the Proclamation's religious exemption ensures that it would not be unfairly favored.

Plaintiffs stretch *Roman Catholic Diocese* even further in arguing that "[t]he problem condemned [in that case] was that . . . 'the State . . . effectively sought to ban all traditional forms of worship in affected "zones" [of the state]'" and that, likewise, Governor Inslee "has effectively sought to ban all sincerely held religious beliefs from healthcare and civil service" through the Proclamation. Dkt. 67 at 13 (quoting *Roman Catholic Diocese*, 141 S. Ct. at 72 (Gorsuch, J., concurring)). There is no basis for this comparison. The law at is issue in *Roman Catholic Diocese* explicitly restricted religious services and thus could not be considered "neutral." In contrast, the Proclamation is in no way directed at any religious exercise and, at most, has an incidental impact on some state employees with particular religious beliefs.

Therefore, the Court finds that the Proclamation is neutral and generally applicable. The Proclamation is accordingly subject to rational basis review and must be upheld if it is "rationally related to a legitimate governmental purpose." *Parents for Privacy*, 949 F.3d at 1238. The Proclamation easily satisfies this standard and passes rational basis review. The Ninth Circuit has

recognized that reducing the spread of COVID-19 is a legitimate state interest.  *See Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021); *Doe v. San Diego Unified School Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021), *reh'g en banc denied*, 22 F.4th 1099 (9th Cir. 2022), *application for injunctive relief den'd*, 142 S. Ct. 1099 (2022).  This Court joins many others in finding that requiring state employees to be vaccinated is rationally related to stemming the spread of COVID-19.  *See, e.g.*, *Does 1-6 v. Mills*, 16 F.4th 20, 32 (1st Cir. 2021), *denying application for injunctive relief sub nom. Does 1-3 v. Mills*, 142 S. Ct. 17 (2021); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, at 290 n.29 (2d Cir. 2021) (per curiam); *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *3-4 (E.D. Wash. Apr. 27, 2022); *Burcham v. City of Los Angeles*, No. 2:21-cv-07296-RGK-JPR, 2022 WL 99863 (C.D. Cal. Jan. 7, 2022); *see also Doe v. San Diego Unified Sch. Dist.*, 19 F.4th at 1177 (school district's vaccine mandate passed rational basis review).  Plaintiffs' Free Exercise claim is therefore dismissed.

### B. Employment Discrimination

#### 1. Americans with Disabilities Act

The complaint alleges that two plaintiffs are either allergic to the vaccine or have "other medical conditions making the vaccine inappropriate."  Dkt. 1 ¶ 181.  Plaintiffs argue that these individuals are therefore disabled under the ADA, and that Defendants failed to reasonably accommodate them by, for example, allowing them to telework.  *Id.* ¶¶ 184-88.

To maintain claims under the ADA, a plaintiff must first exhaust his or her administrative remedies.  *See Abdul-Haqq v. Kaiser Foundation Hosp.*, 669 F. App'x 462, 462-63 (9th Cir. 2016).  Plaintiffs do not claim they have exhausted their administrative remedies, either in their complaint

11

or in response to Defendants' motion, which specifically accused Plaintiffs of having failed to do so. Accordingly, Plaintiffs' ADA claim fails as a matter of law and is dismissed.

### 2. Title VII

According to Plaintiffs, the Proclamation has a disparate impact on Black and Hispanic employees as well as those with sincerely held religious beliefs and therefore violates Title VII. Dkt. 1 ¶¶ 189-98. Plaintiffs' opposition brief does not specifically mention Title VII, but the Court assumes its reference to "disparate impact" is an attempt to invoke that claim. *See* Dkt. 67 at 16.

To maintain a Title VII claim, a plaintiff must first exhaust his or her administrative remedies or face dismissal. *See Gobin v. Microsoft Corp.*, No. C20-1044 MJP, 2021 WL 148395, at *4 (W.D. Wash. Jan. 15, 2021) (citing 42 U.S.C. § 12117(a)); *Abdul-Haqq*, 669 F. App'x at 462-63. As with their ADA claim, Plaintiffs do not allege that they have exhausted their administrative remedies. *See* Dkt. 1 ¶¶-189-98; Dkt. 67 at 16-17. Plaintiffs' Title VII claim fails as a matter of law and is dismissed.

## C. Contract Claims

Plaintiffs allege that the Proclamation violates the Constitution's Contracts Clause and that Defendants' termination of Plaintiffs breached their individual employment contracts with the state.

### 1. Contracts Clause

The Contracts Clause of the Constitution provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10, cl. 1. There is a two-part test for whether a state law violates the Contracts Clause. *See Sveen v. Melin*, 138 S. Ct. 1815, 1821-22 (2018). The Court considers first whether the law "operate[s] as a substantial impairment

of a contractual relationship," and second, whether the law "is drawn in an appropriate and reasonable way to advance a significant and legitimate public interest." *Id.*; *Apartment Ass'n of Los Angeles Cty, Inc. v. City of Los Angeles*, 10 F.4th 905, 913 (9th Cir. 2021).

Plaintiffs have not satisfied the first prong of the Contracts Clause test—that the Proclamation imposes a substantial impairment on their contractual relationship with the state. As Defendants note, substantial impairment is found when a law (1) "undermines the contractual bargain," (2) "interferes with the party's reasonable expectations," and (3) "prevents the party from safeguarding or reinstating [their] rights." Dkt. 61 at 11 (quoting *Sveen*, 138 S. Ct. at 1822). Plaintiffs' opposition brief does not address any of these elements. *See* Dkt. 67 at 19-20. Accordingly, the Court finds that Plaintiffs have not established substantial impairment.

Moreover, Plaintiffs fail the second prong of the Contracts Clause test, requiring that the law be "drawn in an appropriate and reasonable way to advance a significant and legitimate public interest." *Apartment Ass'n of Los Angeles*, 10 F.4th at 913. Plaintiffs' opposition brief does not seriously dispute that stemming the spread of COVID-19 is a legitimate public interest or that the Proclamation is reasonably drawn to advance that interest. *See* Dkt. 67 at 19-20. Moreover, the Court has already determined that the Proclamation is reasonably designed to advance a legitimate state interest. *See supra* Section II.A.

**2. Individual Employment Contracts**

Plaintiffs have not attached any of their individual contracts. Courts have noted that this alone can be grounds for dismissal of contract claims. *E.g.*, *Wise*, 2021 WL 4951571, at *6 (examining and dismissing claims nearly identical to those in this case). The Court cannot find that Plaintiffs' contracts were breached by Defendants' terminating their employment without

13

examining the contracts themselves. Plaintiffs' selective references to a handful of provisions are insufficient.

In summary, Plaintiffs have failed to satisfy the standard for a Contracts Clause claim or provide any support for individual breach of contract claims. Accordingly, these claims are dismissed.

### D. Procedural Due Process

An unspecified number of plaintiffs claim that their procedural due process rights were violated because Defendants failed to provide "oral or written notice of the charges against them . . . and an opportunity to present their side of the story," as required by *Loudermill*. Dkt. 1 ¶ 207; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

*Loudermill* held that "[t]he essential requirements of due process . . . are notice and an opportunity to respond." *Loudermill*, 470 U.S. at 546. Public employees are entitled to "oral or written notice of the charges against [them]" and "an opportunity to present [their] side of the story" before they are terminated. *Id.* Notice and opportunity can be provided without a formal hearing. *Id.* at 545. An employee's procedural due process rights are satisfied if he "[can] respond orally and in writing and present rebuttal affidavits" disputing the reasons for his termination. *Id.* at 542.

Plaintiffs cannot seriously maintain that they did not have written notice of the vaccine requirement. The Proclamation was enacted and widely disseminated on August 9, 2021, and Plaintiffs had until October 18, 2021 to comply. Furthermore, the Proclamation created a process by which employees could apply for exemptions and accommodations, and essentially "present [their] side of the story" to avoid termination. This opportunity to be heard and "present rebuttal

affidavits" is all that *Loudermill* requires. Plaintiffs nevertheless claim that the exemption process is deficient because, "even when granted [the exemptions] ha[ve] no practical effect." Dkt. 67 at 18. According to Plaintiffs, the state is granting exemptions but not always accommodating unvaccinated employees. The fact that Plaintiffs' accommodation requests were unsuccessful, however, does not belie the fact that Plaintiffs were given the *opportunity* to be heard required by *Loudermill*.

Additionally, Plaintiffs' allegations that certain employees—particularly firefighters and state troopers—"have not been given [their] statutorily required hearing" or "cannot be disciplined without the process required under RCW 43.43," even taken as true, have nothing to do with the Proclamation. State regulations may set forth their own procedures for notice and hearings, but the question before the Court is whether the Proclamation provides that required process, and the Court has found that it does.[6]

In so finding, the Court joins other "[d]istrict courts around the country [that] have" rejected procedural due process challenges "to employer-issued vaccine mandates during the COVID-19 pandemic, finding employees are not entitled to greater service than what is provided by enactment of the mandates themselves." *Wise*, 2022 WL 1243662, at *5; *Bacon*, 2021 WL 5183059, at *3 (citing *Harris*, 2021 WL 3848012, at *5; *Valdez v. Grisham*, 559 F.Supp.3d 1161 (D.N.M. 2021); *Bauer v. Summey*, 2021 WL 4900922 (D.S.C. Oct. 21, 2021)). Accordingly, Plaintiffs' procedural due process claim fails and is dismissed.

---

[6] Whether individual plaintiffs have not been given their statutorily required hearings is a factual matter that should be taken up with their respective agencies and does not constitute a proper challenge to the validity of the Proclamation.

### E. Equal Protection Clause

Plaintiffs' complaint alleges that the Proclamation violates the Equal Protection Clause of the 14th Amendment by treating religious exemptions differently than secular ones. Dkt. 1 ¶ 213. Plaintiffs did not pursue this claim either in their TRO motion or in their opposition to Defendants' motion for judgment on the pleadings. Dkts. 2, 63. Therefore, the Court deems Plaintiffs' Equal Protection claim abandoned. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (claims not raised in opposition are deemed abandoned); *Long v. Pend Oreille Cnty Sheriff's Dep't*, 269 F. App'x 749, 751 (9th Cir. 2008); *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

### F. Substantive Due Process

Plaintiffs claim that Governor Inslee violated their substantive due process rights because the Proclamation exceeded the Governor's authority under state law. Dkt. 1 ¶¶ 171-75. Like their Equal Protection claim, Plaintiffs' substantive due process claim is asserted in the complaint but not argued in their TRO briefs or raised in their opposition to Defendants' motion for judgment on the pleadings. *See* Dkt. 67. Therefore, the Court deems Plaintiffs' substantive due process claim abandoned. *See supra*, Section III.E.

### G. Right to Privacy

Plaintiffs claim that the Proclamation violates their "Constitutional, statutory, and common law rights to bodily integrity and autonomy," and seem to argue that they had no choice but to be vaccinated against their will. *See* Dkt. 1 ¶ 220; Dkt. 67 at 18-19.

Plaintiffs' claim is meritless. The Proclamation does not compel anyone to be vaccinated without their consent. Plaintiffs had a choice: get vaccinated and continue working for the state

16

or remain unvaccinated and work elsewhere.  In support of their claim, Plaintiffs rely on *Kumar*, a case in which employees were allegedly deceived into eating animal byproducts in violation of their religious beliefs.  Dkt. 67 at 19 (citing *Kumar v. Gate Gourmet Inc.*, 180 Wn. 2d 481, 486 (2014)).  *Kumar* is totally inapplicable.  Plaintiffs have not been forcibly fed or injected with anything.  Plaintiffs' claim that the Proclamation violated their rights to bodily integrity and privacy fails and is dismissed.

### III.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' motion for judgment on the pleadings (Dkt. 61) and dismisses the complaint in its entirety.

DATED this 27th day of May, 2022.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE